**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-61901-CIV-SMITH

JAMES DAR, LLC,
     Plaintiff,

v.

OJ COMMERCE, LLC, *et al.*
     Defendants.

and

OJ COMMERCE, LLC and
OJCOMMERCE.COM, INC.
     Third Party Plaintiffs.

v.

BB&T CORPORATION,
SOPHIE G. KNOWLES,
JP MORGAN CHASE BANK, N.A.,
and LORI A. SENGSTOCK,
     Third Party Defendants.
_____/

**DEFENDANTS OJ COMMERCE, LLC AND OJCOMMERCE.COM, INC.'S**
**THIRD PARTY COMPLAINT**

Defendants OJ Commerce, LLC ("OJC") and OJCommerce.com, Inc. ("OJC.com") (collectively, "Defendants" or "Third Party Plaintiffs') by and through the undersigned counsel, hereby bring this action for contribution and/or indemnity against BB&T Corporation, Sophie G. Knowles, JP Morgan Chase Bank, N.A., and Lori A. Sengstock (collectively, "Third Party Defendants") without prejudice to Defendants' pending Motion to Dismiss Plaintiff's First Amended Complaint and to Strike Plaintiff's Request for Attorneys' Fees (ECF 46), and state the following:

1

## INTRODUCTION

OJC was sending money to Plaintiff James Dar, LLC based on bank information that it had received.  Despite each payment being identified as being directed to James Dar, BB&T Corporation and JP Morgan Chase Bank, N.A. negligently deposited those payments into the accounts of Sophie G. Knowles and Lori A. Sengstock.  And despite the payments being clearly marked as being from OJC to James Dar, Knowles and Sengstock fraudulently withdrew and spent the payments and were unjustly enriched by them.  As a result, Defendants/Third Party Plaintiffs seek contribution and indemnification from the four Third Party Defendants related to Plaintiff's claims against Defendants, as well as punitive damages against Knowles and Senstock for their willful and wanton actions.

## PARTIES

1.      OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and is selling consumer goods to customers.

2.      OJC.com is a Delaware corporation with its principal place of business in Broward County, Florida.

3.      Upon information and belief, BB&T Corporation ("BB&T") is a North Carolina corporation, and its principal place of business is in the State of North Carolina.

4.      Upon information and belief, Sophie G. Knowles ("Knowles") is a resident and citizen of the State of Maryland.

5.      Upon information and belief, JP Morgan Chase Bank, N.A. ("Chase") is a Delaware corporation, and its principal place of business is in the State of New York.

6.      Upon information and belief, Lori A. Sengstock ("Sengstock") is a resident and citizen of the State of Ohio.

## JURISDICTION

7.      This Court has jurisdiction over these ancillary claims, arising from the main claims asserted by Plaintiff James Dar, LLC ("James Dar" or "Plaintiff") in its First Amended Complaint, as this Court has jurisdiction over Plaintiff's main claims.

8.      This Court has jurisdiction over these claims pursuant to Fed. R. Civ. P. 14 and by supplemental jurisdiction, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the alleged claims in Plaintiff's First Amended Complaint.

## FACTS COMMON TO ALL COUNTS

9.      On January 7, 2020, James Dar and OJC executed the sole agreement between the parties, an E-Commerce Vendor Agreement ("Vendor Agreement"), which governed their e-commerce business relationship.  A true and correct copy of the Vendor Agreement is attached to this Third Party Complaint as **Exhibit A** and is incorporated herein.

10.      In the Vendor Agreement, the parties included terms about, *inter alia*, providing product information regarding James Dar's products, the procedures for returns and cancellations of James Dar's products by consumers, and invoicing by James Dar to OJC and payments by OJC to James Dar.

11.      The Vendor Agreement included detailed procedures for how and when James Dar would supply invoices to OJC, how purchase orders ("PO") and disputed invoices would be handled, what charges may and may not be included on an invoice, and a mandatory forum selection clause in Broward County, Florida.

12.     OJC made 10 electronic ACH payments over 10+ weeks from early July through mid-September 2020 to what was alleged to be James Dar's BB&T account based on information which appeared to be sent by James Dar's accounting department to OJC.

13.     With each ACH payment made, two emails were sent to James Dar: (1) from the bank making the ACH transfer; and (2) from OJC itself, attaching a spreadsheet of the items paid for.

14.     Despite the multiple emails sent to James Dar with each weekly transfer, James Dar did not inform OJC that it allegedly had not received the payments for over 12 weeks.

15.     In late September 2020, James Dar finally alleged that it had not received the 10 prior ACH payments totaling $20,468.41 from OJC and provided OJC yet another account, this time at WellsFargo, to send payment to, but at least one subsequent payment to that account was returned, with OJC inquiring yet again about the correct bank account information.

16.     On October 12, 2020, James Dar's accounting department appeared to respond to OJC's inquiry with another new account, this time at Chase, to which OJC subsequently made six payments during October-November 2020.

17.     In early December 2020, James Dar followed up on the payments sent by OJC, for the first time contending that James Dar allegedly never received the most recent batch of payments totaling $23,343.59 sent during October-November 2020.

18.     On January 21, 2021, counsel for James Dar sent a demand for payment to OJC.

19.     James Dar has never sent a demand letter for payment to OJC.com.

20.     On  May 3, 2021, James Dar filed its Complaint for Breach of Contract, Common Counts, and Alter Ego Liability against OJC, OJC.com (collectively, "Defendants"), and Does 1-10 in the Superior Court of California for the County of Los Angeles.

21.     On June 11, 2021, counsel for OJC again advised James Dar's counsel about the lack of merit of pursuing its claims in California, when the Vendor Agreement contained a mandatory forum selection clause requiring exclusive venue and jurisdiction in Broward County, Florida.

22.     On July 2, 2021, Defendants removed the case to the United States District Court for the Central District of California.

23.     On August 2, 2021, James Dar moved to remand the case back to state court.

24.     The next day, Defendants moved to transfer this case to the Southern District of Florida based on the mandatory forum selection clause in the Vendor Agreement.

25.     On September 9, 2021, Judge Fischer of the Central District of California denied James Dar's motion to remand and granted Defendants' motion to transfer this case to the Southern District of Florida.

26.     After this case was transferred, on September 23, 2021, Defendants filed and served their Motion to Dismiss, seeking dismissal of Plaintiff's Complaint with prejudice.

27.     Instead of opposing Defendants' motion to dismiss or moving to amend, on October 7, 2021 – the date its opposition was due – Plaintiff abandoned its Complaint and filed a so-called "Notice of Non-Objection to Granting Defendant's Motion to Dismiss Without Prejudice," "provided Plaintiff is allowed a minimum of twenty (20) days to amend its Complaint."

28.     Plaintiff made no argument whatsoever as to why its Complaint should not be dismissed with prejudice, no attempt to show how its Complaint could be amended to save its meritless claims, nor did not Plaintiff move for leave to amend, or attach or set forth the proposed amendment.

29.     Defendants' motion to dismiss was ultimately granted as unopposed.

30.     Plaintiff filed its First Amended Complaint on February 18, 2022, asserting two alleged claims for Breach of Contract and an alleged claim for Accounts Stated, alleging entitled to "no less than $55,642.84," as well as interest, costs, and attorney's fees.  A true and correct copy of the First Amended Complaint and its exhibits are attached to this Third Party Complaint as **Exhibit B** and is incorporated herein.

31.     On March 4, 2022, Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's First Amended Complaint and to strike Plaintiff's requests for attorney's fees.

32.     On April 20, 2022, OJC filed its Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint.  A true and correct copy of OJC's Answer, Affirmative Defenses, and Counterclaims and its exhibits are attached to this Third Party Complaint as **Exhibit C** and is incorporated herein.

33.     On April 20, 2022, OJC.com filed its Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint.  A true and correct copy of OJC.com's Answer, Affirmative Defenses, and Counterclaims and its exhibits are attached to this Third Party Complaint as **Exhibit D** and is incorporated herein.

34.     Defendants have discovered that, upon information and belief, Knowles had received ACH payments totaling $20,468.41 in her bank account at BB&T from OJC over 10+ weeks from early July through mid-September 2020.

35.     Defendants have also discovered that, upon information and belief, Knowles had knowingly and wrongfully withdrawn and spent the $20,468.41 from OJC referenced above, without any legitimate reason or basis for doing so.

36.     Defendants have discovered that, upon information and belief, Sengstock had received ACH payments totaling $23,343.59 in her bank account at JP Morgan Chase Bank from OJC in October-November 2020.

37.     Defendants have also discovered that, upon information and belief, Sengstock had knowingly and wrongfully withdrawn and spent the $23,343.59 from OJC referenced above, without any legitimate reason or basis for doing so.

**COUNT I – CONTRUBUTION/INDEMNITY BASED ON NEGLIGENCE**
**Third Party Plaintiffs Against BB&T**

38.     Third Party Plaintiffs repeat and reallege paragraphs 1-37, as if fully set forth herein.

39.     BB&T owed a duty to Third Party Plaintiffs to depositors, and the general public at large, to prevent imposters from committing fraud against third parties.

40.     BB&T knew or should have known that the payments received at its bank were from OJC to James Dar, not Knowles.

41.     Nonetheless, BB&T allowed OJC's payments to James Dar to be deposited into Knowles' account and fraudulently withdrawn by her.

42.     Upon information and belief, BB&T failed to prevent Knowles from committing fraud against Third Party Plaintiffs and thereby stealing money from Third Party Plaintiffs.

43.     As a result, BB&T failed to protect Third Party Plaintiffs against the unreasonable risk of injury and damage.

44.     BB&T breached its duty to Third Party Plaintiffs as described above.

45.     BB&T's breach was the actual and proximate cause of Third Party Plaintiffs' injury.

46.     Due to BB&T's negligence, Third Party Plaintiffs were damaged in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

47.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against BB&T for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41.

### COUNT II – CONTRUBUTION/INDEMNITY BASED ON FRAUD
### Third Party Plaintiffs Against Knowles

48.     Third Party Plaintiffs repeat and reallege paragraphs 1-47, as if fully set forth herein.

49.     Prior to and at the time OJC sent ACH attempted to send payments to James Dar, Knowles, by and through her statements and actions, with the intent to deceive OJC and to induce OJC to send ACH payments to BB&T, upon information and belief, suggested and represented to OJC as a fact that BB&T was a bank that James Dar used to receive payments.

50.     Knowles knew or believed that her representations to OJC were not true when they were made to the OJC.

51.     Knowles intended to induce OJC into sending 11 ACH payments of $20,468.41 to BB&T over 10+ weeks from early July through mid-September 2020.

52.     Knowles knew that the 11 ACH payments were sent from OJC to James Dar, yet Knowles willfully withdrew, retained, and fraudulently spent OJC's payments anyway.

53.     Knowles knew that her representations about the bank account information were material to OJC sending the ACH payments to BB&T.

54.     OJC reasonably, justifiably, and actually relied on Knowles' misrepresentations about the bank account information.

55.     By relying on Knowles' misrepresentations, OJC was damaged in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

56.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Knowles for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41.

57.     As detailed above, Knowles made knowingly false representations to OJC about ACH bank account payment information. Knowles knew that there was a high likelihood that OJC would be injured and damaged by the false bank account information. Knowles' fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Knowles for her fraud against OJC.

## COUNT III – CONTRUBUTION/INDEMNITY BASED ON UNJUST ENRICHMENT
### Third Party Plaintiffs Against Knowles

58.     Third Party Plaintiffs repeat and reallege paragraphs 1-57, as if fully set forth herein.

59.     Knowles stole money from OJC in an amount of at least $20,468.41.

60.     Third Party Plaintiffs lack an adequate remedy at law to recover the amount of at least $20,468.41 from Knowles.

61.     Third Party Plaintiffs, and more specifically OJC, conferred a benefit upon Knowles when she received, withdrew, keep, and spent OJC's money.

62.     Knowles appreciated and knew that she was not entitled to OJC's money.

63.     Knowles knew that the 11 ACH payments were sent from OJC to James Dar, yet Knowles willfully withdrew, retained, and spent OJC's payments anyway.

64.     Knowles' acceptance and retention of OJC's money under the circumstances described above make it inequitable for Knowles to do so without returning or otherwise paying the amount of at least $20,468.41 to OJC.

65.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Knowles for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

66.     As detailed above, Knowles knowingly stole OJC's money. Knowles knew that there was a high likelihood that OJC would be injured and damaged by her theft. Knowles' theft and unjust enrichment against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to have its money stolen. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Knowles.

### COUNT IV – CONTRUBUTION/INDEMNITY BASED ON NEGLIGENCE
### Third Party Plaintiffs Against Chase

67.     Third Party Plaintiffs repeat and reallege paragraphs 1-38, as if fully set forth herein.

68.     Chase owed a duty to depositors, and the general public at large, to prevent imposters  from committing fraud against third parties.

69.     Chase knew or should have known that the payments received at its bank were from OJC to James Dar, not Sengstock.

70.     Nonetheless, BB&T allowed OJC's payments to James Dar to be deposited into Sengstock's account and fraudulently withdrawn by her.

71.     Upon information and belief, Chase failed to prevent Sengstock from committing fraud against Third Party Plaintiffs and thereby stealing money from Third Party Plaintiffs.

72.     As a result, Chase failed to protect Third Party Plaintiffs against the unreasonable risk of injury and damage.

73.     Chase breached its duty to Third Party Plaintiffs as described above.

74.     Chase's breach was the actual and proximate cause of Third Party Plaintiffs' injury.

75.     Due to Chase's negligence, Third Party Plaintiffs were damaged in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

76.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Chase for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59.

### COUNT V – CONTRUBUTION/INDEMNITY BASED ON FRAUD
**Third Party Plaintiffs Against Sengstock**

77.     Third Party Plaintiffs repeat and reallege paragraphs 1-37 and 67-76, as if fully set forth herein.

78.     Prior to and at the time OJC sent ACH attempted to send payments to James Dar, Sengstock, by and through her statements and actions, with the intent to deceive OJC and to induce OJC to send ACH payments to Chase, upon information and belief, suggested and represented to OJC as a fact that Chase was a bank that James Dar used to receive payments.

79.     Sengstock knew or believed that her representations to OJC were not true when they were made to the OJC.

80.     Sengstock intended to induce OJC into sending six ACH payments of $23,343.59 to BB&T over six weeks during October-November 2020.

11

81.     Sengstock knew that the six ACH payments were sent from OJC to James Dar, yet Sengstock willfully withdrew, retained, and fraudulently spent OJC's payments anyway.

82.     Sengstock intended to induce OJC into sending ACH payments of $23,343.59 to JP Morgan Chase Bank in October-November 2020.

83.     Sengstock knew that her representations about the bank account information were material to OJC sending the ACH payments to Sengstock.

84.     OJC reasonably, justifiably, and actually relied on Sengstock's misrepresentations about the bank account information.

85.     By relying on Sengstock's misrepresentations, OJC was damaged in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

86.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Sengstock for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59.

87.     As detailed above, Sengstock made knowingly false representations to OJC about ACH bank account payment information. Sengstock knew that there was a high likelihood that OJC would be injured and damaged by the false bank account information. Sengstock's fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Sengstock for her fraud against OJC.

## COUNT VI – CONTRUBUTION/INDEMNITY BASED ON UNJUST ENRICHMENT
### Third Party Plaintiffs Against Sengstock

88.     Third Party Plaintiffs repeat and reallege paragraphs 1-37 and 67-87, as if fully set forth herein.

89.     Sengstock stole money from OJC in an amount of at least $23,343.59.

90.     Third Party Plaintiffs lack an adequate remedy at law to recover the amount of at least $23,343.59 from Sengstock.

91.     Third Party Plaintiffs, and more specifically OJC, conferred a benefit upon Sengstock when she received, withdrew, keep, and spent OJC's money.

92.     Sengstock appreciated and knew that she was not entitled to OJC's money.

93.     Sengstock's acceptance and retention of OJC's money under the circumstances described above make it inequitable for Sengstock to do so without returning or otherwise paying the amount of at least $23,343.59 to OJC.

94.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Sengstock for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

95.     As detailed above, Sengstock knowingly stole OJC's money. Sengstock knew that there was a high likelihood that OJC would be injured and damaged by her theft. Sengstock's theft and unjust enrichment against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to have its money stolen. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Sengstock.

**OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, Third Party Plaintiffs respectfully demand the following relief:

a.      Judgment against Third Party Plaintiffs on all of OJC's causes of action;

b.      Contribution and indemnification against each and all Third Party Defendants;

c.      Judgment against BB&T for damages in the amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs;

d.      Judgment against Knowles for damages in the amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs;

e.      Judgment against Knowles for punitive damages in the amount to be determined at trial, but at least triple Third Party Plaintiffs' damages;

f.      Judgment against Chase for damages in the amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs;

g.      Judgment against Sengstock for damages in the amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs;

h.      Judgment against Sengstock for punitive damages in the amount to be determined at trial, but at least triple Third Party Plaintiffs' damages;

i.      Third Party Plaintiffs' costs incurred in obtaining judgment against Third Party Defendants; and

j.      Such other relief as the Court considers just and proper.


Dated: April 22, 2022                          Respectfully Submitted,
                                               Shlomo Y. Hecht, P.A.
                                               4538 NW 85th Ave.
                                               Coral Springs, FL 33065
                                               Phone: 954-861-0025

                                               By: /s/ Shlomo Y Hecht
                                               Florida State Bar No.: 127144
                                               Email: sam@hechtlawpa.com
                                               *Attorney for Defendants OJ Commerce, LLC
                                               and OJCommerce.com, Inc.*

## **CERTIFICATE OF TRANSMITTAL / SERVICE**

I HEREBY certify that on April 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and served this document upon Plaintiff's counsel of record.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht