## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-61901-CIV-SMITH

JAMES DAR, LLC,
     Plaintiff,

v.

OJ COMMERCE, LLC, *et al.*
     Defendants.

and

OJ COMMERCE, LLC and
OJCOMMERCE.COM, INC.
     Third Party Plaintiffs.

v.

BB&T CORPORATION,
SOPHIE G. KNOWLES,
JP MORGAN CHASE BANK, N.A.,
and LORI A. SENGSTOCK,
     Third Party Defendants.
_____/

### DEFENDANTS OJ COMMERCE, LLC AND OJCOMMERCE.COM, INC.'S AMENDED THIRD PARTY COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Defendants OJ Commerce, LLC ("OJC") and OJCommerce.com, Inc. ("OJC.com") (collectively, "Defendants" or "Third Party Plaintiffs') by and through the undersigned counsel, hereby file and serve this Amended Third Party Complaint for contribution and/or indemnity against BB&T Corporation, Sophie G. Knowles, JP Morgan Chase Bank, N.A., and Lori A. Sengstock (collectively, "Third Party Defendants") without prejudice to Defendants' pending Motion to Dismiss Plaintiff's First Amended Complaint and to Strike Plaintiff's Request for Attorneys' Fees (ECF 46), and state the following:

1

## INTRODUCTION

OJC was sending money to Plaintiff James Dar, LLC based on bank information that it had received via spoofed emails from Sophie G. Knowles ("Knowles") and Lori A. Sengstock ("Sengstock"), which unbeknownst to OJC contained the bank information for Knowles and Senstock, not James Dar.  Despite each payment being identified as being directed to James Dar, BB&T Corporation and JP Morgan Chase Bank, N.A. deposited those payments into the accounts of Knowles and Sengstock with knowledge that the payments were not intended for them.  And despite the payments being clearly marked as being from OJC to James Dar, Knowles and Sengstock fraudulently withdrew and spent the payments and were unjustly enriched by them.  As a result, Defendants/Third Party Plaintiffs seek contribution and indemnification from the four Third Party Defendants related to Plaintiff's claims against Defendants, as well as punitive damages against Knowles and Senstock for their willful and wanton actions.

## PARTIES

1.      OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer engaged in interstate commerce and is selling consumer goods to customers.

2.      OJC.com is a Delaware corporation with its principal place of business in Broward County, Florida.

3.      Upon information and belief, BB&T Corporation ("BB&T") is a North Carolina corporation, and its principal place of business is in the State of North Carolina.

4.      Upon information and belief, Sophie G. Knowles ("Knowles") is a resident and citizen of the State of Texas.

5.      Upon information and belief, JP Morgan Chase Bank, N.A. ("Chase") is a Delaware corporation, and its principal place of business is in the State of New York.

6.      Upon information and belief, Lori A. Sengstock ("Sengstock") is a resident and citizen of the State of Ohio.

## JURISDICTION

7.      This Court has jurisdiction over these ancillary claims, arising from the main claims asserted by Plaintiff James Dar, LLC ("James Dar" or "Plaintiff") in its First Amended Complaint, as this Court has jurisdiction over Plaintiff's main claims.

8.      This Court has jurisdiction over these claims pursuant to Fed. R. Civ. P. 14 and by supplemental jurisdiction, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the alleged claims in Plaintiff's First Amended Complaint.

9.      This Court has personal jurisdiction over BB&T pursuant to Fla. Stat. § 48.193, as it committed intentional tortious acts within this District.  This Court also has personal jurisdiction over BB&T because it is operating, conducting, engaging in, or carrying on a business or business venture in this District, and BB&T has had continuous and systematic general business contact with this District.

10.     This Court has personal jurisdiction over Knowles pursuant to Fla. Stat. § 48.193, as she committed intentional tortious acts within this District as described in more detailed herein, including by sending fraudulent emails to OJC in this District to trick OJC into sending money to Knowles and by fraudulently inducing and soliciting OJC to send ACH payments from this District to Knowles' account, when Knowles knew that OJC's payments were intended for James Dar.  As a result of her actions, Knowles wrongfully retained the ACH payments from OJC that she knew were intended for James Dar, thereby harming and damaging OJC in this

District.

11.     This Court has personal jurisdiction over Chase pursuant to Fla. Stat. § 48.193, as it committed intentional tortious acts within this District.  This Court also has personal jurisdiction over Chase because it is operating, conducting, engaging in, or carrying on a business or business venture in this District, and Chase has had continuous and systematic general business contact with this District.

12.     This Court has personal jurisdiction over Sengstock pursuant to Fla. Stat. § 48.193, as she committed intentional tortious acts within this District as described in more detailed herein, including by sending fraudulent emails to OJC in this District to trick OJC into sending money to Sengstock and by fraudulently inducing and soliciting OJC to send ACH payments from this District to Sengstock's account, when Sengstock knew that OJC's payments were intended for James Dar.  As a result of her actions, Sengstock wrongfully retained the ACH payments from OJC that she knew were intended for James Dar, thereby harming and damaging OJC in this District.

13.     Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS COMMON TO ALL COUNTS**

14.     On January 7, 2020, James Dar and OJC executed the sole agreement between the parties, an E-Commerce Vendor Agreement ("Vendor Agreement"), which governed their e-commerce business relationship.  A true and correct copy of the Vendor Agreement is attached to this Amended Third Party Complaint as **Exhibit A** and is incorporated herein.

15.     In the Vendor Agreement, the parties included terms about, *inter alia*, providing product information regarding James Dar's products, the procedures for returns and cancellations

of James Dar's products by consumers, and invoicing by James Dar to OJC and payments by OJC to James Dar.

16.     The Vendor Agreement included detailed procedures for how and when James Dar would supply invoices to OJC, how purchase orders ("PO") and disputed invoices would be handled, what charges may and may not be included on an invoice, and a mandatory forum selection clause in Broward County, Florida.

17.     OJC made at least 12 electronic ACH payments over 10+ weeks from early July through mid-September 2020 to what was alleged to be James Dar's BB&T account based on information which appeared to be sent by James Dar's accounting department to OJC.

18.     With each ACH payment made, two emails were sent to James Dar: (1) from the bank making the ACH transfer; and (2) from OJC itself, attaching a spreadsheet of the items paid for.

19.     Despite the multiple emails sent to James Dar with each weekly transfer, James Dar did not inform OJC that it allegedly had not received the payments for over 12 weeks.

20.     In late September 2020, James Dar finally alleged that it had not received the 12 prior ACH payments totaling $20,468.41 from OJC and provided OJC yet another account, this time at WellsFargo, to send payment to, but at least one subsequent payment to that account was returned, with OJC inquiring yet again about the correct bank account information.

21.     On October 12, 2020, James Dar's accounting department appeared to respond to OJC's inquiry with another new account, this time at Chase, to which OJC subsequently made six payments during October-December 2020.

22.     In early December 2020, James Dar followed up on the payments sent by OJC, for the first time contending that James Dar allegedly never received the most recent batch of payments totaling $23,343.59 sent during October-December 2020.

23.     On January 21, 2021, counsel for James Dar sent a demand for payment to OJC.

24.     James Dar has never sent a demand letter for payment to OJC.com.

25.     On  May 3, 2021, James Dar filed its Complaint for Breach of Contract, Common Counts, and Alter Ego Liability against OJC, OJC.com (collectively, "Defendants"), and Does 1-10 in the Superior Court of California for the County of Los Angeles.

26.     On June 11, 2021, counsel for OJC again advised James Dar's counsel about the lack of merit of pursuing its claims in California, when the Vendor Agreement contained a mandatory forum selection clause requiring exclusive venue and jurisdiction in Broward County, Florida.

27.     On July 2, 2021, Defendants removed the case to the United States District Court for the Central District of California.

28.     On August 2, 2021, James Dar moved to remand the case back to state court.

29.     The next day, Defendants moved to transfer this case to the Southern District of Florida based on the mandatory forum selection clause in the Vendor Agreement.

30.     On September 9, 2021, Judge Fischer of the Central District of California denied James Dar's motion to remand and granted Defendants' motion to transfer this case to the Southern District of Florida.

31.     After this case was transferred, on September 23, 2021, Defendants filed and served their Motion to Dismiss, seeking dismissal of Plaintiff's Complaint with prejudice.

32.     Instead of opposing Defendants' motion to dismiss or moving to amend, on October 7, 2021 – the date its opposition was due – Plaintiff abandoned its Complaint and filed a so-called "Notice of Non-Objection to Granting Defendant's Motion to Dismiss Without Prejudice," "provided Plaintiff is allowed a minimum of twenty (20) days to amend its Complaint."

33.     Plaintiff made no argument whatsoever as to why its Complaint should not be dismissed with prejudice, no attempt to show how its Complaint could be amended to save its meritless claims, nor did not Plaintiff move for leave to amend, or attach or set forth the proposed amendment.

34.     Defendants' motion to dismiss was ultimately granted as unopposed.

35.     Plaintiff filed its First Amended Complaint on February 18, 2022, asserting two alleged claims for Breach of Contract and an alleged claim for Accounts Stated, alleging entitled to "no less than $55,642.84," as well as interest, costs, and attorney's fees.  A true and correct copy of the First Amended Complaint and its exhibits are attached to this Amended Third Party Complaint as **Exhibit B** and is incorporated herein.

36.     On March 4, 2022, Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's First Amended Complaint and to strike Plaintiff's requests for attorney's fees.

37.     On April 20, 2022, OJC filed its Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint.  A true and correct copy of OJC's Answer, Affirmative Defenses, and Counterclaims and its exhibits are attached to this Amended Third Party Complaint as **Exhibit C** and is incorporated herein.

38.     On April 20, 2022, OJC.com filed its Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint.  A true and correct copy of OJC.com's Answer,

Affirmative Defenses, and Counterclaims and its exhibits are attached to this Amended Third Party Complaint as **Exhibit D** and is incorporated herein.

39.     Defendants have discovered that Knowles had received ACH payments that were intended for James Dar totaling $20,468.41 in her bank account at BB&T from OJC over 10+ weeks from early July through mid-September 2020.

40.     Defendants have also discovered that Knowles had knowingly and wrongfully withdrawn and spent the $20,468.41 from OJC that was intended for James Dear as referenced above, without any legitimate reason or basis for doing so.

41.     Defendants have discovered that Sengstock had received ACH payments that were intended for James Dar totaling $23,343.59 in her bank account at JP Morgan Chase Bank from OJC in October-December 2020.

42.     Defendants have also discovered that Sengstock had knowingly and wrongfully withdrawn and spent the $23,343.59 from that was intended for James Dar as OJC referenced above, without any legitimate reason or basis for doing so.

## COUNT I – CONTRUBUTION/INDEMNITY BASED ON FLA. STAT. § 670.207
### Third Party Plaintiffs Against BB&T

43.     Third Party Plaintiffs repeat and reallege paragraphs 1-42, as if fully set forth herein.

44.     BB&T had actual knowledge that at least 12 ACH payments were deposited into Knowles' personal account from early July through mid-September 2020 were in fact intended to be sent by OJC to James Dar, as the ACH payments were clearly identified that it was intended for James Dar, not Knowles.

45.     BB&T also knew that the large withdrawals were taken out of Knowles' account in the hours and days immediately following the aforementioned ACH transfers, wherein bank

employees and BB&T confirmed recent transactions and deposits – including the deposits from OJC into Knowles' account that were clearly, on their face, meant for James Dar – so as to allow the large withdrawals.

46.     Indeed, BB&T knew from the unusual activity taking place in Knowles' account that Knowles was receiving a number of large ACH transfers that were on their face not intended for Knowles and that Knowles was immediately withdrawing the wrongfully acquired funds from her account, in an attempt to cover up her theft.

47.     BB&T knew that the payments received at its bank and deposited into Knowles' account were from OJC to James Dar, not Knowles.

48.     Nonetheless, BB&T allowed OJC's payments to James Dar to be deposited into Knowles' account and fraudulently withdrawn by her.

49.     BB&T failed to exercise due care in allowing the ACH transfers into Knowles' account, particularly since the ACH payments plainly were addressed to James Dar, and were not in any way addressed to Knowles.

50.     This was not an isolated incident.  Indeed, had BB&T properly monitored its system for allowing ACH transfers into customer accounts, it would have and should have discovered that at least 12 ACH payments made into Knowles' account were not intended for her, but in fact were intended for James Dar.

51.     BB&T thereby failed to prevent Knowles from committing fraud against Third Party Plaintiffs and thereby repeatedly stealing money from Third Party Plaintiffs.

52.     BB&T's actions and failures were the actual and proximate cause of Third Party Plaintiffs' injury.

53.     Due to BB&T's violation of Fla. Stat. § 670.207, Third Party Plaintiffs were damaged in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

54.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against BB&T for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41.

<u>**COUNT II – CONTRUBUTION/INDEMNITY BASED ON FRAUD**</u>
**Third Party Plaintiffs Against Knowles**

55.     Third Party Plaintiffs repeat and reallege paragraphs 1-42, as if fully set forth herein.

56.     On July 1, 2020, OJC requested via email from James Dar its "routing and account information" so that OJC could pay James Dar.

57.     In response, upon information and belief, Knowles sent herself or by another at her direction or complicity the following spoofed email dated July 1, 2020 at 2:14 PM to Doreal Wilkinson of OJC at vendors@ojcommerce.com, wherein she impersonated James Dar:

> Good Morning
> Please see bank information below as requested.  If you need anything further please feel free to contact me directly. Thank you
>
> BB&T Bank:
>
> James Dar, LLC
> Rt # XXXXX3308
> Acct # XXXXXX2340
>
> Awaiting your response
> Best regards,
>
> Manny Santana, Accounting, Jamesdar

58.     Knowles also sent herself or by another at her direction or complicity the following spoofed email dated July 1, 2020 at 7:40 PM to Doreal Wilkinson of OJC at vendors@ojcommerce.com, wherein she again impersonated James Dar again:

As requested please find below our updated Ach account information

BB&T
JAMES DAR, LLC
ACCOUNT NUMBER: XXXXXX2340
ROUTING NUMBER: XXXXX3308
BANK ADDRESS: 919 FREDERICK RD,
CATONSVILLE, MD 21228

Please advise and also let me know if this payment will be going out today.
Awaiting your response
Best regards,

Manny Santana, Accounting, Jamesdar

59.     Unbeknownst to OJC, the BB&T account and routing number information was for Knowles' personal account, not for James Dar's account.

60.     Knowles sent her misleading emails to OJC with the intent to deceive OJC and to induce OJC to send ACH payments to her in her BB&T account, which she represented to OJC as a fact that BB&T was a bank that James Dar used to receive payments.

61.     Knowles knew or believed that her representations to OJC were not true when they were made to the OJC as evidenced by the fact that Knowles knew that the banking information she sent to OJC was for her own personal account, not for James Dar.

62.     By her knowingly false and misleading actions outlined above, Knowles intended to induce and trick OJC into sending at least 12 ACH payments of a total of $20,468.41 to BB&T to her account over 10+ weeks from early July through mid-September 2020, including as received by Knowles, as evidenced by her BB&T bank statements, on July 3, July 13, July 21,

July 28, August 4, August 11, August 19, August 26, September 1, September 11, September 16, and September 22, 2020.

63.     Based on Knowles' bank account records, Knowles knew that the at least 12 ACH payments were intended to be sent by OJC to James Dar, as the ACH payments were addressed to James Dar, yet Knowles willfully withdrew, retained, and fraudulently spent OJC's payments anyway, including on at least these dates immediately following the deposit of OJC's funds in Knowles' account: July 10, July 13, July 21, July 29, August 7, August 11, August 27, September 2, September 3, September 4, September 8, and September 14, 2020.

64.     Knowles knew that her false representations about the James Dar bank account information were material to OJC sending the ACH payments to BB&T, as she knew that OJC clearly would not have sent the payments intended for James Dar to Knowles' personal account had OJC known the truth.

65.     OJC reasonably, justifiably, and actually relied on Knowles' misrepresentations about the bank account information for James Dar as Knowles spoofed a James Dar email account in sending her false payment emails to OJC.

66.     By relying on Knowles' misrepresentations, OJC was damaged in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

67.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Knowles for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41.

68.     As detailed above, Knowles made knowingly false representations to OJC about James Dar's ACH bank account payment information in order to induce OJC to send money intended for James Dar for Knowles without OJC's knowledge. Knowles knew that there was a

high likelihood that OJC would be injured and damaged by the false emails and James Dar bank account information. Knowles' fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded and intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Knowles for her fraud against OJC.

### COUNT III – CONTRUBUTION/INDEMNITY BASED ON UNJUST ENRICHMENT
### Third Party Plaintiffs Against Knowles

69.     Third Party Plaintiffs repeat and reallege paragraphs 1-42 and 55-68, as if fully set forth herein.

70.     Knowles stole money from OJC in an amount of at least $20,468.41.

71.     Third Party Plaintiffs lack an adequate remedy at law to recover the amount of at least $20,468.41 from Knowles.

72.     Third Party Plaintiffs, and more specifically OJC, conferred a benefit upon Knowles when she received, withdrew, kept, and spent OJC's money, which she knew was intended for James Dar, not her.

73.     Knowles appreciated and knew that she was not entitled to OJC's money.

74.     Knowles knew that the at least 12 ACH payments were intended to be sent from OJC to James Dar, yet Knowles willfully withdrew, retained, and spent OJC's payments anyway.

75.     Knowles' acceptance and retention of OJC's money under the circumstances described above make it inequitable for Knowles to do so without returning or otherwise paying the amount of at least $20,468.41 to OJC.

76.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Knowles for contribution and/or indemnification

for the amount of damages and costs awarded to Plaintiff, in an amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs.

77.     As detailed above, Knowles knowingly stole OJC's money. Knowles knew that there was a high likelihood that OJC would be injured and damaged by her theft. Knowles' theft and unjust enrichment against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to have its money stolen. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Knowles.

**COUNT IV – CONTRUBUTION/INDEMNITY BASED ON FLA. STAT. § 670.207**
**Third Party Plaintiffs Against Chase**

78.     Third Party Plaintiffs repeat and reallege paragraphs 1-42, as if fully set forth herein.

79.     Chase had actual knowledge that six ACH payments were deposited into Sengstock's personal account from October-December 2020 were in fact addressed by OJC to James Dar, not Sengstock.  Upon information and belief, Chase's online account records also identified additional information about the ACH transfers being addressed to James Dar, not Sengstock.

80.     Chase also knew that the large withdrawals were taken out of Sengstock's account in the hours and days immediately following the aforementioned ACH transfers, wherein bank employees and Chase confirmed recent transactions and deposits – including the deposits from OJC into Sengstock's account that were clearly, on their face, meant for James Dar – so as to allow the large withdrawals.

81.     Indeed, Chase knew from the unusual activity taking place in Sengstock's account that Sengstock was receiving a number of large ACH transfers that were on their face not

14

intended for Sengstock and that Sengstock was immediately withdrawing the wrongfully acquired funds from her account, in an attempt to cover up her theft.

82.     Chase knew that the payments received at its bank and deposited into Sengstock's account were from OJC to James Dar, not Sengstock.

83.     Nonetheless, Chase allowed OJC's payments to James Dar to be deposited into Sengstock's account and fraudulently withdrawn by her.

84.     Chase failed to exercise due care in allowing the six ACH transfers into Sengstock's account, particularly since the ACH payments plainly were not in any way addressed to Knowles.

85.     This was not an isolated incident.  Indeed, had Chase properly monitored its system for allowing ACH transfers into customer accounts, it would have and should have discovered that six ACH payments made into Sengstock's account were not intended for her, but in fact were intended for James Dar.

86.     Chase thereby failed to prevent Sengstock from committing fraud against Third Party Plaintiffs and thereby repeatedly stealing money from Third Party Plaintiffs.

87.     Chase's failures and actions were the actual and proximate cause of Third Party Plaintiffs' injury.

88.     Due to Chase's violation of Fla. Stat. § 670.207, Third Party Plaintiffs were damaged in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

89.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Chase for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59.

## COUNT V – CONTRUBUTION/INDEMNITY BASED ON FRAUD
**Third Party Plaintiffs Against Sengstock**

90.     Third Party Plaintiffs repeat and reallege paragraphs 1-42, as if fully set forth herein.

91.     On October 10, 2020, OJC requested via email from James Dar its "valid banking info" so that OJC could pay James Dar.

92.     In response, upon information and belief, Sengstock sent herself or by another at her direction or complicity the following spoofed email dated October 12, 2020 at 1:36 PM to Simon Hecht of OJC at simon@ojcommerce.com and Doreal Wilkinson of OJC at dwilkinson@ojcommerce.com, wherein she impersonated James Dar:

Please update our record with our bellow payment info and process our payment.

Chase Bank Bank:

James Dar, LLC

Rt # XXXXX0037
Acct # XXXXX2621

Best regards,

Manny [Santana, Accounting, Jamesdar]

93.     Unbeknownst to OJC, the Chase account and routing number information was for Sengstock's personal account, not for James Dar's account.

94.     Sengstock sent her misleading emails to OJC with the intent to deceive OJC and to induce OJC to send ACH payments to her in her Chase account, which she represented to OJC as a fact that Chase was a bank that James Dar used to receive payments.

95.     Sengstock knew or believed that her representations to OJC were not true when they were made to the OJC as evidenced by the fact that Sengstock knew that the banking information she sent to OJC was for her own personal account, not for James Dar.

96.     By her knowingly false and misleading actions outlined above, Sengstock intended to induce and trick OJC into sending six ACH payments of $23,343.59 to Chase over six weeks during October-December 2020, including as received by Sengstock, as evidenced by her Chase bank account statements, on October 19, October 29, November 10, November 19, November 23, and December 3, 2020.

97.     Based on Sengstock's bank account records, Sengstock knew that the six ACH payments were intended to be sent by OJC to James Dar and not her, as the ACH payments were addressed to James Dar, yet Sengstock willfully withdrew, retained, and fraudulently spent OJC's payments anyway, including on at least these dates immediately following the deposit of OJC's funds in Sengstock's account: October 19, October 21, October 30, November 2, November 10, November 12, November 20, November 23, December 3, December 4, and December 7, 2020.

98.     Sengstock knew that her false representations about the James Dar bank account information were material to OJC sending the ACH payments to Chase, as she knew that OJC clearly would not have sent the payments intended for James Dar to Sengstock's personal account had OJC known the truth.

99.     OJC reasonably, justifiably, and actually relied on Sengstock's misrepresentations about the bank account information for James Dar as Sengstock spoofed a James Dar email account in sending her false payment emails to OJC.

100.    By relying on Sengstock's misrepresentations, OJC was damaged in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

101.    Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Sengstock for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59.

102.    As detailed above, Sengstock made knowingly false representations to OJC about James Dar's ACH bank account payment information in order to induce OJC to send money intended for James Dar for Sengstock without OJC's knowledge. Sengstock knew that there was a high likelihood that OJC would be injured and damaged by the false email and James Dar bank account information. Sengstock's fraud against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be defrauded and intentionally injured. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Sengstock for her fraud against OJC.

### COUNT VI – CONTRUBUTION/INDEMNITY BASED ON UNJUST ENRICHMENT
**Third Party Plaintiffs Against Sengstock**

103.    Third Party Plaintiffs repeat and reallege paragraphs 1-42 and 90-102, as if fully set forth herein.

104.    Sengstock stole money from OJC in an amount of at least $20,468.41.

105.    Third Party Plaintiffs lack an adequate remedy at law to recover the amount of at least $23,343.59 from Sengstock.

106.    Third Party Plaintiffs, and more specifically OJC, conferred a benefit upon Sengstock when she received, withdrew, keep, and spent OJC's money, which she knew was intended for James Dar, not her.

107.    Sengstock appreciated and knew that she was not entitled to OJC's money.

108.     Sengstock knew that the six ACH payments were intended to be sent from OJC to James Dar, yet Sengstock willfully withdrew, retained, and spent OJC's payments anyway.

109.     Sengstock's acceptance and retention of OJC's money under the circumstances described above make it inequitable for Sengstock to do so without returning or otherwise paying the amount of at least $23,343.59 to OJC.

110.     Accordingly, if Plaintiff receives a judgment against Third Party Plaintiffs, Third Party Plaintiffs are entitled to judgment against Sengstock for contribution and/or indemnification for the amount of damages and costs awarded to Plaintiff, in an amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs.

111.     As detailed above, Sengstock knowingly stole OJC's money. Sengstock knew that there was a high likelihood that OJC would be injured and damaged by her theft. Sengstock's theft and unjust enrichment against OJC was so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to have its money stolen. Accordingly, OJC seeks punitive damages in an amount to be determined at trial, but at least triple Third Party Plaintiffs' damages against Sengstock.

**OJC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, Third Party Plaintiffs respectfully demand the following relief:

a.     Judgment against Third Party Plaintiffs on all of OJC's causes of action;

b.     Contribution and indemnification against each and all Third Party Defendants;

c.     Judgment against BB&T for damages in the amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs;

     d.      Judgment against Knowles for damages in the amount of at least $20,468.41, plus Third Party Plaintiffs' attorney's fees and costs;

     e.      Judgment against Knowles for punitive damages in the amount to be determined at trial, but at least triple Third Party Plaintiffs' damages;

     f.      Judgment against Chase for damages in the amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs;

     g.      Judgment against Sengstock for damages in the amount of at least $23,343.59, plus Third Party Plaintiffs' attorney's fees and costs;

     h.      Judgment against Sengstock for punitive damages in the amount to be determined at trial, but at least triple Third Party Plaintiffs' damages;

     i.      Third Party Plaintiffs' costs incurred in obtaining judgment against Third Party Defendants; and

     j.      Such other relief as the Court considers just and proper.

Dated: June 27, 2022

Respectfully Submitted,
Shlomo Y. Hecht, P.A.
4538 NW 85th Ave.
Coral Springs, FL 33065
Phone: 954-861-0025

By: /s/ Shlomo Y Hecht
Florida State Bar No.: 127144
Email: sam@hechtlawpa.com
*Attorney for Defendants OJ Commerce, LLC and OJCommerce.com, Inc.*

## **CERTIFICATE OF TRANSMITTAL / SERVICE**

I HEREBY certify that on June 27, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and served this document upon all counsel of record.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht