UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61901-CIV-SMITH/VALLE

James Dar, LLC,

Plaintiff,

v.

OJCommerce.com, Inc. and OJCommerce, LLC,

Defendants.

and

OJCommerce.com, Inc. and OJCommerce, LLC,

Third Party Plaintiffs,

v.

BB&T Corporation, Sophie G. Knowles,
JP Morgan Chase Bank, N.A. and
Lori A. Sengstock,

Third Party Defendants.

______________________________________/

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff James Dar, LLC ("JamesDar"), pursuant to Local Rule 56.1(a)(1), hereby submits this Statement of Undisputed Material Facts, and states as follows:

1. JamesDar is a manufacturer, retailer and wholesaler of household items and furniture. Plaintiff sells mostly to large corporations such as Home Depot, Target and Walmart. (Ex. 1, ¶ 3).[1]

[1] Attached as Exhibit 1 is the Declaration of James Dardashti.

2. JamesDar and OJC entered into a written E-Commerce Vendor Agreement ("Vendor Agreement") in January 2020. (Ex. 1, ¶ 4) (Ex 2).[2]

3. Pursuant to the Vendor Agreement, throughout the year 2020, OJC submitted purchase orders ("POs") to JamesDar and JamesDar fulfilled the purchase orders. (Ex. 1, ¶ 5).

4. Once a purchase was satisfied, OJC's online portal system would generate automatic reports. (Ex. 1, ¶ 6).

5. From these reports and pursuant to Paragraph 1.7 *et seq.* of the Vendor Agreement, JamesDar would generate and issue invoices for each satisfied purchase order. (Ex. 1, ¶ 7).

6. The invoices include all relevant information including the items shipped; date of shipment; invoice number; invoice date; purchase order number; and the total amount due to JamesDar. (Ex. 1, ¶ 8).

7. The purchase order and invoice numbers correspond to one another, i.e. they are the same number for each transaction or set of transactions. (Ex. 1, ¶ 9).

8. OJC then reviewed the invoices and sent emails entitled "OJ Commerce Remittance – Jamesdar." The first email was sent on February 28, 2020. (Ex. 3, ¶ 6).[3] (Ex. 4).[4]

9. Over the next four months, JamesDar received these emails, but did not receive payment for the outstanding invoices. (Ex. 3, ¶ 7).

10. During this time period, Santana contacted OJC to determine the status of payment. (Ex. 3, ¶ 8).

---

[2] Attached as Exhibit 2 is the Vendor Agreement.

[3] Attached as Exhibit 3 is the Declaration of Manny Santana ("Santana").

[4] Attached as Exhibit 4 is the February 28, 2020 email.

11. By June 2020, OJC had not paid for most of what it had ordered since the start of the year. (Ex. 1, ¶ 10).

12. At the end of June 2020, JamesDar sent emails to OJC warning that OJC's account would be placed on hold until payments are made. (Ex. 1, ¶ 11).

13. As a result of the failure to pay invoices, the orders placed by OJC were put on hold. On June 29, 2020, OJC requested information as to the orders and on June 30, 2020, OJC was advised that the account was past due on payments. (Ex. 3, ¶ 9). (Ex. 5).[5]

14. On June 30, 2020, at 12:36 p.m., Doreal Wilkinson ("Wilkinson"), a senior buy at OJC, emailed JamesDar and copied Santana advising that remittance notices were being sent to JamesDar. (Ex. 3, ¶ 10). (Ex. 5).

15. OJC agreed to make a large payment to JamesDar by credit card which was very unusual for JamesDar. (Ex. 1, ¶ 12).

16. After being paid by credit card, JamesDar requested that payments going forward be by ACH (direct payments) to pay for outstanding invoices and future invoices. (Ex. 1, ¶ 13).

17. On June 30, 2020, at 1:29 p.m., Wilkinson emailed Santana stating that OJC's "ACH form isn't importing data so please send us your banking info. To ensure confidentially, provide details to accounting@ojcommerce.com and reply back once submitted. I'll then confirm the information has been updated in our system." (Ex. 3, ¶ 11) (Ex. 6).[6]

18. On June 30, 2020, at 3:05 p.m., Wilkinson sent an email to JamesDar, copying Santana, confirming that Santana had spoken with Wilkinson and provided payment information

---

[5] Attached as Exhibit 5 is the June 2020 email chain.

[6] Attached as Exhibit 6 is the email chain with the June 30, 2020 email.

for the past due balance. She also requested confirmation that the inventory feed be reinstated and that the order hold be released. (Ex. 5). (Ex. 3, ¶ 12).

19. On July 1, 2020, at 2:05 p.m. Wilkinson received an email from Santana with JamesDar's Wells Fargo bank account information. (Ex. 3, ¶ 13) (Ex. 6).

20. On July 1, 2020 at 2:12 p.m., Wilkinson forwarded an email to Simon Hecht ("Hecht") of OJC, purportedly forwarding an email from Santana with banking information for a BB&T Bank account. (Ex. 3, ¶ 14) (Ex. 7).[7]

21. JamesDar has *only* had accounts at Wells Fargo Bank and has never provided either Defendant or anyone else for that matter, with any other bank information. (Ex. 1, ¶ 14) (Ex. 3, ¶ 15).

22. The BB&T Bank account information was not sent by Santana. (Ex. 3, ¶ 16).

23. The email sent to Hecht is not a forwarded email, but rather a cut and paste into the email from Wilkinson to Hecht providing banking information for JamesDar at *BB&T bank*. (Ex 7).

24. On July 1, 2020, at 3:56 p.m. (Pacific Time), after Wilkinson sent the email with the BB&T information to Hecht, Wilkinson sent an email to Santana confirming that the Wells Fargo information was received and "[t]he banking information from Jamesdar has been updated and the next payment will be remitted via ACH." (Ex. 3 ¶ 17) (Ex. 6).

25. After the Wells Fargo information was sent and confirmed by OJC, OJC continued to send the "OJ Commerce Remittance – Jamesdar" emails with information pertaining to orders approved with invoice numbers. (Ex. 3 ¶ 18)

---

[7] Attached Exhibit 7 is the July 1, 2020 email chain.

26. However, as had occurred with the prior remittance emails, JamesDar did not receive payments when these emails were sent. (Ex. 3 ¶ 19).

27. JamesDar communicated, by email and phone with OJC, on numerous occasions, about unreceived payments and outstanding invoices. (Ex. 1, ¶ 15) (Ex. 3, ¶ 20).

28. Although confirming that it had received JamesDar's Wells Fargo bank account information, from July 1, 2020 through September 18, 2020, OJC made payments to the BB&T account forwarded by Wilkinson to Hecht. (Ex. 13).[8]

29. OJC made 12 payments to the BB&T account totaling $20,468.51. (Ex. 13).

30. The BB&T account was not JamesDar's account. (Ex. 1, ¶ 16).

31. The BB&T account was actually an account owned by Third-Party Defendant Sophie Knowles ("Knowles"). [ECF No. 52, pp. 6, 8-10].[9]

32. In September, JamesDar, having again not received payments for invoices, contacted OJC to determine the status of payment. (Ex. 3, ¶ 21).

33. On September 15, 2020, after a conversation with Hecht, Santana expressed concern that JamesDar was not receiving ACH deposits into its account and confirmed that JamesDar received the remittance emails but no deposits followed. (Ex. 8).[10] (Ex. 3, ¶ 22).

34. On September 16, 2020, Wilkinson indicated that the accounting team would send a report. (Ex. 3, ¶ 23). (Ex. 9).[11]

---

[8] Attached as Exhibit 13 is the spreadsheet of OJC payments.

[9] ECF No. 52 is OJC's Third-Party Complaint.

[10] Attached as Exhibit 8 is the September 15, 2020, 11:45 a.m. email.

[11] Attached as Exhibit 9 is the September 16, 2020 10:42 a.m. email chain.

35. On September 16, 2020, Hecht provided information as to ACH payments and indicated that they were sent to a certain bank routing and account number. (Ex. 3, ¶ 24). (Ex. 10).[12]

36. The bank account and routing number are not for a Wells Fargo account and are not for a JamesDar account. (Ex. 3, ¶ 25).

37. The BB&T account was not JamesDar's account. (Ex. 1, ¶ 16).

38. On September 22, 2020, at 10:34 a.m., Wilkinson then claimed that OJCommerce was provided with BB&T banking information. (Ex. 3, ¶ 26). (Ex. 11)[13]

39. On September 23, 2020, Santana again sent the Wells Fargo bank information and requested that the records be updated. (Ex. 3, ¶ 27) (Ex. 12).[14]

40. On September 23, 2020, Hecht confirmed that the information was updated to the Wells Fargo bank account. (Ex. 12) (Ex. 3, ¶ 28).

41. OJC then made two payments to JamesDar's Wells Fargo account on September 25, 2020 and October 2, 2020. (Ex. 3, ¶ 29) (Ex. 13).

42. On October 9, 2020, Hecht sent an email to Santana indicating that an ACH payment of $3,807.50 was returned back. (Ex. 3, ¶ 30) (Ex. 14).[15]

43. In response, Santana asked that they update the records with information. (Ex. 3, ¶ 32) (Ex. 14).

---

[12] Attached as Exhibit 10 is the September 16, 2020 2:32 p.m. email chain.

[13] Attached as Exhibit 11 is the September 22, 2020 email.

[14] Attached as Exhibit 12 is the September 23, 2020 email exchanges.

[15] Attached as Exhibit 14 are the September 19, 2020 through October 14, 2020 emails.

44. On October 14, 2020 at 1:12 p.m., Hecht confirmed that the information was uploaded. (Ex. 3, ¶ 33) (Ex. 14).

45. However, on October 12, 2020 at 1:36 p.m., Hecht purportedly received an email from Santana's email address with information for a Chase Bank account. (Ex. 3, ¶ 34) (Ex. 15).[16]

46. The October 12, 2020, email now indicated that the bank account information was "Chase Bank Bank" [sic]. (Ex. 15).

47. The October 12, 2020 email (Ex. 15) with the Chase Bank information was not sent by Santana. (Ex. 3, ¶ 35) (Ex. 22, ¶ 14).[17]

48. OJC then made six payments to a Chase Bank account. (Ex. 13).

49. The Chase account was not JamesDar's account. (Ex. 1, ¶ 17).

50. These six payments were made to a bank account owned by Third-Party Defendant Lori Sengstock ("Sengstock") [ECF No. 52, pp. 7, 11-13].

51. OJC paid a total of $23,343.59 to Sengstock's Chase Bank account. (Ex. 13) [ECF No. 52, p. 7].

52. On October 27, 2020, having again not received payments, Santana inquired as to the status of payments from OJC. (Ex. 3, ¶ 36) (Ex. 16).[18]

53. On November 17, 2020, Santana again inquired as to payment because he had received remittance reports and had not received payment. (Ex. 3, ¶ 37) (Ex. 17).[19]

---

[16] Attached as Exhibit 15 is the October 12, 2020 1:36 p.m. email.

[17] Attached as Exhibit 22 is the Declaration of JamesDar's expert, Joe Hovsepian ("Expert").

[18] Attached as Exhibit 16 is the October 17, 2020 email.

[19] Attached as Exhibit 17 is the November 17, 2020 email.

54. On November 19, 2020, Wilkinson confirmed receipt of the email, indicated that they were in contact with the bank, and indicated that they would have the issues fixed ASAP. (Ex. 3, ¶ 38) (Ex. 18).[20]

55. On November 24, 2020, Wilkinson sent an email to Santana indicating that everything is sorted out now. (Ex. 3, ¶ 39) (Ex. 19).[21]

56. On December 1, 2020, having still not received payments, Santana sent an email to OJC indicating that they had not received payments and that there was an outstanding balance. (Ex. 3, ¶ 40) (Ex. 19).

57. On December 2, 2020, Wilkinson responded indicating that ACH payments go out automatically "but lately our payment keep bouncing back." (Ex. 3, ¶ 41) (Ex. 19).

58. On December 3, 2020, Wilkinson forwarded the October 12, 2020 email with the purported Chase bank information. (Ex. 3, ¶ 42) (Ex. 20).[22]

59. Santana contacted Wilkinson to advise that he had never sent information for payment to Chase. (Ex. 3, ¶ 43).

60. On December 3, 2020 at 5:13 p.m., Wilkinson then sent an email claiming that the IT manager pulled data indicating that the update to Chase banking came from JamesDar. (Ex. 3, ¶ 44) (Ex. 21).[23]

61. However, the information provided by Wilkinson regarding the email does not establish that it came from JamesDar. (Ex. 22, ¶ 15).

---

[20] Attached as Exhibit 18 is the November 19, 2020 email.

[21] Attached as Exhibit 19 is the November 10, 2020 through December 3, 2020 emails.

[22] Attached as Exhibit 20 is the December 3, 2020 email.

[23] Attached as Exhibit 21 is the December 3, 2020 email.

62. The email authentication and sender IP address of 40.107.220.58, as indicated in the Wilkinson email, is not an IP address associated with JamesDar. (Ex. 22, ¶ 16).

63. The email forwarded by Wilkinson demonstrates that the Chase information did not originate at JamesDar. (Ex. 22, ¶ 17).

64. A review of Santana's emails demonstrated that Santana did not send the October 12, 2020 email with the Chase information. (Ex. 3, ¶ 45) (Ex. 22, ¶ 18).

65. After being contacted at the beginning of December, OJC processed payment to JamesDar's Wells Fargo account. (Ex. 3, ¶ 46) (Ex. 13).

66. The payments OJC made to the BB&T account were for payment invoices submitted by JamesDar to OJC. (Ex. 13).

67. The payments OJC made to the Chase account were for payment of invoices submitted by JamesDar to OJC. (Ex. 13).

68. OJC confirmed that the payments to BB&T were for JamesDar invoices. (Ex. 13).

69. OJC confirmed that the payments made to the Chase account were for JamesDar invoices. (Ex 13).

70. The invoices which were paid by OJC to the BBT account have not been paid to JamesDar. (Ex. 3, ¶ 47) (Ex. 13).

71. The invoices which were paid by OJC to the Chase account have not been paid to JamesDar. (Ex. 3, ¶ 48) (Ex. 13).

72. OJC instituted a Third-Party Complaint against the recipients of the funds to the respective BBT and Chase accounts and the banks. [ECF No. 52].

73. OJC settled with Sengstock and she agreed to repay $9,000.00 to OJC. [ECF No. 172-2].

74. OJC settled with Knowles and she agreed to repay $9,000.00 to OJC. [ECF No. 72-1].

75. In early 2021, Hovsepian communicated with Santana with regard to the email system. Based upon Hovsepian's review of the emails on JamesDar's system, he was able to conclude that there was no breach or compromise of JamesDar's infrastructure environment in 2020 and through February 10, 2021. (Ex. 22, ¶ 9).

76. JamesDar's systems are protected by an enterprise grade firewall strong passphrase encryption, security software tools, and web enterprise security software. (Ex. 22, ¶ 10).

77. All systems were maintained and patched and monitored 24/7 for failures and/or breaches. (Ex. 22, ¶ 11).

78. Upon a review of the company logs for the systems, Hovsepian was able to determine that there was no breach of JamesDar's email systems. (Ex. 22, ¶ 12).

79. The emails provided by OJC, that allegedly came from JamesDar, are the result of a phishing email, which made it look like it came from someone at JamesDar. (Ex. 22, ¶13).

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: September 16, 2022

Eric Lee (Bar No. 961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988

**Attorneys for Plaintiff**
**James Dar, LLC**

**SERVICE LIST**

**Attorneys for Defendants/Third Party Plaintiffs**
**OJCommerce.com, Inc. and OJCommerce, LLC**

Shlomo Y. Hecht, Esq.
Shlomo Y. Hecht, P.A.
sam@hechtlawpa.com
4538 N.W. 85th Ave.
Coral Springs, FL 33065

**Attorneys for Third Party Defendant**
**Truist Bank f/k/a BB&T Corporation**

Mark Elliot Steiner, Esq.
mes@lgplaw.com
Liebler, Gonzalez & Portuondo
44 W. Flagler St., 25th Flr.
Miami, FL 33130

**Attorneys for Third Party Defendant**
**JP Morgan Chase Bank, N.A.**

Charles Brumby, Esq.
cbrumby@homerbonner.com
Jose A. Ortiz, Esq.
Jortiz@homerbonner.com
mosorio@homerbonner.com
Home Bonner, et al.
1441 Brickell Ave., Ste. 1200
Miami, FL 33131

**Attorneys for Third Party Defendant**
**Sophie G. Knowles**

Justin Christopher Carlin, Esq.
eservice@carlinfirm.com
mpanico@carlinfirm.com
jcarlin@carlinfirm.com
mberner@carlinfirm.com
The Carline Law Firm, PLLC
1401 E. Broward Blvd., Ste. 101
Ft. Lauderdale, FL 33301

**Attorneys for Third Party Defendant**
**Lori A. Sengstock**

Benjamin Michael Weissman, Esq.
bnweissman@gmail.com
The David Chico Law Group
607 Celebration Avenue
Celebration, FL 34747